# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOVE ALTONIO BROOKS,** | : **No. 3:12cv67** |
| **Plaintiff** | : |
| | : **(Judge Munley)** |
| **v.** | : |
| | : **(Magistrate Judge Schwab)** |
| **B.A. BLEDSOE, OFFICER KEPNER,** | : |
| **OFFICER SMITH, PSYCHOLOGIST** | : |
| **MINK, CO T. CRAWLEY, UNKNOWN** | : |
| **OFFICERS, OFFICER PRUTZMAN,** | : |
| **A. JORDAN, D. YOUNG,** | : |
| **A. COTTERALL, OFFICER SMITH,** | : |
| **and GREGORY GEORGE** | : |
| **Defendants** | : |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Plaintiff Love Altonio Brooks (hereinafter "plaintiff") asserts constitutional tort and negligence claims arising from his incarceration at the United States Penitentiary in Lewisburg, Pennsylvania (hereinafter "USP-Lewisburg") against the United States and several Bureau of Prisons (hereinafter "BOP") employees. Before the court for disposition is Magistrate Judge Susan Schwab's report and recommendation (hereinafter "R&R"). The R&R proposes denying plaintiff's motion for summary judgment (Doc. 73) and granting in part and denying in part defendants' motion to dismiss/motion for summary judgment (Doc. 69). Both parties filed objections to the R&R (Docs. 123, 129), and they are ripe for disposition.

**Background**[1]

Plaintiff, a *pro se* inmate formerly incarcerated in the special management unit at USP-Lewisburg, initiated the instant action on January 11, 2012. (Doc. 1). Plaintiff avers constitutional tort claims pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and negligence claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80. Plaintiff named the United States of America and several USP-Lewisburg staff members as defendants (collectively "defendants").

On September 24, 2012, plaintiff filed an amended complaint. (Doc. 38, Am. Compl.). Generally, plaintiff's amended complaint asserts USP-Lewisburg staff retaliated against him for having previously prevailed in a federal lawsuit against USP-Lewisburg and for filing administrative

_____

[1] The court will adopt Magistrate Judge Schwab's factual statement (Doc. 120, R&R at 12-34) in its entirety. <u>See</u> FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); <u>see also</u> 28 U.S.C. § 636(b)(1); <u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1085 (3d Cir. 1983). To the extent plaintiff objects to Magistrate Judge Schwab's factual statement, plaintiff's objections will be addressed more particularly below. This background section is merely a brief overview of the case.

grievances against USP-Lewisburg staff.[2]  (Id. ¶¶ 1-20).  Plaintiff also

asserts a plethora of conditions of confinement claims and challenges

USP-Lewisburg's policy prohibiting inmates from possessing "plain nudity

material and [Uniform Commercial Code] material."  (Id. ¶ 1).

Specifically, plaintiff's Bivens claims assert: (1) Dr. Mink verbally

abused plaintiff in contravention of the Eighth Amendment;[3] (2) Defendant

Young rejected books mailed to plaintiff in violation of the First

Amendment; (3) Defendant Prutzman stole and damaged plaintiff's

personal property infringing on his Fifth Amendment due process rights;

(4) First Amendment retaliation against Defendant Kepner because

Kepner denied plaintiff recreation on April 14, 2011; (5) First Amendment

retaliation against Defendant Kepner because Kepner allegedly

orchestrated a "planned attack" on plaintiff by another inmate on May 13,

2011; (6) Eighth Amendment denial of medical care against Defendant

George arising from the May 13, 2011 "planned attack"; (7) Defendants

---

[2]  Plaintiff received a five thousand dollar ($5,000.00) settlement in a previous *pro se* Bivens action.  See Brooks v. Smith et al., No. 3:04-cv-2680 (M.D. Pa. 2004) (Docs. 113, 114).

[3]  Plaintiff avers Dr. Mink accused him of "fondling my penis while wearing no pants" in a loud manner leading to strife between plaintiff and several other prisoners.  (Doc. 38, Am. Compl. ¶ 3).

Crawley, Jordan and Cotterall denied plaintiff due process during plaintiff's July 28, 2011 disciplinary hearing in contravention of the Fifth Amendment; (8) Warden Bledsoe's policy prohibiting inmates from possessing Uniform Commercial Code materials violates the First Amendment; (9) Warden Bledsoe's policy prohibiting inmates from possessing sexually explicit images and written materials contravenes the First Amendment; and (10) Eighth Amendment inadequate ventilation claim.

Plaintiff's FTCA claims include: (1) a personal injury claim arising from the May 13, 2011 "planned attack" and (2) a negligence claim pertaining to plaintiff's loss of his personal property.

On March 4, 2013, defendants filed a motion to dismiss/motion for summary judgment seeking the dismissal of all claims within plaintiff's amended complaint. Plaintiff filed his own motion for summary judgment on May 18, 2013 requesting summary judgment on his FTCA claims arising from the May 13, 2011 "planned attack". (Docs. 73, 75). Magistrate Judge Schwab issued an R&R on March 31, 2015 (Doc. 120), recommending the court deny plaintiff's motion for summary judgment and grant in part and deny in part defendants' motion to dismiss/motion for

summary judgment (Doc. 69).  The parties have filed objections to the R&R (Docs. 123, 129), and they are ripe for disposition.

**Standard of Review**

Defendants filed a motion to dismiss specific counts within plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35. In evaluating the sufficiency of a complaint, the court may also consider

"matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

Furthermore, both parties filed motions for summary judgment. Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must

examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.  A fact is material if it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts with affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Id. at 324.

**Discussion**

**I.  Report and Recommendation - No Objections**

        Neither plaintiff nor defendants object to the following five (5) recommendations: (1) plaintiff's FTCA claim against the United States

pertaining to the alleged unlawful taking of plaintiff's personal property be dismissed; (2) plaintiff's <u>Bivens</u> claims seeking money damages against the United States and the individual defendants in their official capacities be dismissed; (3) plaintiff's <u>Bivens</u> claim asserting Dr. Mink verbally abused plaintiff in contravention of the Eighth Amendment be dismissed; (4) plaintiff's retaliation claim against Defendant Young regarding Young's rejection of books mailed to plaintiff be dismissed; and (5) plaintiff's <u>Bivens</u> claim against Defendant Prutzman averring Prutzman stole and damaged plaintiff's personal property in violation of the Due Process Clause of the Fifth Amendment be allowed to proceed.

When deciding whether to adopt the report and recommendation when no objections have been filed, we must determine if a review of the record evidences plain error or manifest injustice. FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation."); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); <u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1085 (3d Cir. 1983). No plain error has been discerned following a review of the record. Accordingly, the court will adopt these parts of the R&R.

## II.  Report and Recommendation - Objections

Both parties filed objections to other portions of Magistrate Judge Schwab's R&R.  In disposing of objections to an R&R, the district court must make a de novo determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan, 723 F.2d at 1085.  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  The court may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.  The court will first address plaintiff's objections.

## A.  Plaintiff's objections

Plaintiff objects to the recommendation that the court dismiss several claims, including his claims: (1) against "Officer Smith" and the "Unknown Defendants"; (2) for injunctive relief regarding Warden Bledsoe's rules prohibiting inmates from obtaining or possessing plain nudity materials; (3) against Defendants Bledsoe, Crawley, Kepner, Mink, Prutzman, Jordan, Cotteral and Young arising from the May 13, 2011, "planned attack"; (4) asserting denial of medical care after the "planned attack"; (5) for denial of due process at his July 2011 disciplinary hearing;

(6) regarding USP-Lewisburg's ban on inmates possessing UCC materials; (7) pertaining to USP Lewisburg's ban on inmates possessing plain nudity materials; (8) for negligence under the FTCA; and (9) asserting inadequate ventilation in his prison cell. We address each objection *in seriatim*.

## 1. "Officer Smith" and "Unknown Defendants"

Magistrate Judge Schwab proposes dismissing "Officer Smith" and the "Unknown Defendants" because plaintiff has failed to timely identify and serve these defendants. Plaintiff objects arguing his status as a prisoner hinders his ability to identify these defendants, and therefore, establishes good cause excusing his inability to serve these defendants. We disagree.

Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). The Third Circuit Court of Appeals has explained that the issue of whether the court should dismiss these defendants or

10

grant plaintiff a further extension to effect service is a two-step process. Petrucelli v. Bohringer & Ratzinger, 46 F. 3d 1298, 1305 (3d Cir. 1995). First, the court must determine if good cause exists for plaintiff's failure to timely effect service. Id. If good cause exists, the court must extend the time for service. Second, "[i]f good cause does not exist, the district court must consider whether to grant a discretionary extension of time." Boley v. Kaymark, 123 F. 3d 756, 758 (3d Cir. 1997).

Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995). Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. Id. The court's primary focus in determining whether good cause exists is on the plaintiff's reasons for not complying with the time limit in the first place. Boley, 123 F.3d at 758.

At step one, plaintiff has failed to establish good cause. Plaintiff's *pro se* status and failure to read or understand Rule 4 is not good cause excusing plaintiff's failure to timely identify and serve these defendants.

Veal v. United States, 84 F. App'x 253, 256 (3d Cir. 2004) (citing Tuke v.

United States, 76 F.3d 155, 156 (7th Cir. 1996)).  Moreover, plaintiff failed

to move for an enlargement of time to serve these defendants.  See

McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998)

(noting that good cause is generally established when a plaintiff moves for

an extension of time before the expiration of the 120 days service period.)

As such, plaintiff has failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the

defendant within 120 days, a district court may either dismiss these

defendants, or exercise its discretion to order that service be made within

a specific time.  Petrucelli, 46 F.3d at 1305; see also FED. R. CIV. P. 4(m).

Here, the parties have engaged in discovery from May 18, 2012 through

March 18, 2015–a period of 1,034 days.  Plaintiff, however, has failed to

identify and serve these defendants.  Moreover, the court has already

granted plaintiff an extension of time to serve these defendants.  (See

Doc. 53, Order dated 12/17/2012) (giving plaintiff from 12/17/12 until

1/25/13 to identify and serve these defendants).  Finally, the record is

devoid of any evidence pertaining to these defendants' evasion of service.

Rather, the record establishes that plaintiff has simply given up on his

attempts to serve these defendants.  Therefore, the court will dismiss "Officer Smith" and the "Unknown Defendants" pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## 2.  Injunctive relief

Plaintiff's amended complaint seeks an injunction "blocking the prohibition" of inmates from obtaining, possessing or creating UCC and "plain nudity" materials at USP-Lewisburg.  Defendants contend, and Magistrate Judge Schwab recommends, dismissing plaintiff's claim for injunctive relief as moot because plaintiff no longer resides at USP-Lewisburg.  Plaintiff objects claiming the ban on plain nudity is a policy throughout the BOP, and therefore, his claim for injunctive relief is not moot.

Plaintiff's objection lacks merit for two reasons.  First, plaintiff's claim for injunctive relief is only against Warden Bledsoe, not the entire BOP. Specifically, plaintiff seeks injunctive relief to "block" Warden Bledsoe's "rules" prohibiting inmates from obtaining, possessing or creating UCC related material and from receiving plain nude material.  (Doc. 38, Am. Compl. ¶¶ 13-14).  Thus, the only requested relief presently before the court is plaintiff's injunctive relief claim against Warden Bledsoe, not the

BOP.

Second, it is well recognized that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." Steffel v. Thompson, 415 U.S. 452, 459 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at 459 n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). A prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional. Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993); see also Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge."). Ergo, the court will dismiss plaintiff's claims for injunctive relief as moot.

### 3. __Bivens__ Supervisory claims

Magistrate Judge Schwab recommends dismissing plaintiff's __Bivens__ constitutional tort claims against Defendants Bledsoe, Crawley, Kepner, Mink, Prutzman, Jordan, Coterall and Young, noting these defendants lacked personal involvement regarding the alleged constitutional violations.[4]  Plaintiff only objects to the dismissal of Warden Bledsoe from his supervisory claims.[5]  Accordingly, the court will dismiss all other

---

[4]  Plaintiff's claims include: (1) placement in a recreation cage with ice on the ground; (2) denial of sheets, blankets, toilet paper, a shower and recreation by Defendant Smith; (3) exposure to chemical agents on February 16, 2011; (4) denial of medical attention on February 16, 2011; (5) denial of a shower on April 1, 2011; (6) the double housing of inmates in smaller cells with no room to exercise; (7) being forced, under threat of long-term shackling, to cell with inmates who vocally oppose cell mates, and compulsively masturbate; (8) no duress buttons; (9) no ladders on the bunk beds, no storage shelves, no lockers and only one desk in the cells; (10) inadequate ventilation in cells, which caused heat rash; and (11) improper visiting restrictions.  (Doc. 38, Am. Compl. ¶¶ 1-17).

[5]  Plaintiff's objection states, "I object to the assertion my amended complaint lacks claim[s] of personal involvement for cruel and unusual punishment.  Issue 17 of said complaint, Doc. 38, [re]iterates my original complaint's Issue 16, claiming Defendants Bledsoe, Snyder, Trate and Hudson were jointly responsible for Issues 1 through 14, which encompass those claims."  (Doc. 123, Br. in Supp. of Objections ¶ C(2)). Defendants Snyder, Trate and Hudson, however, were previously dismissed from this action on November 29, 2012.  Brooks v. Bledsoe, No. 3:12-cv-67, 2012 WL 5986977, at *3-6 (M.D. Pa. Nov. 29, 2012). Therefore, the court will only address plaintiff's objection pertaining to Warden Bledsoe.

defendants as unopposed.

As previously noted, plaintiff's amended complaint asserts several Bivens claims against Warden Bledsoe. The Third Circuit Court of Appeals recognizes that a Bivens civil rights action has the same standard as a 42 U.S.C. § 1983 civil rights action. Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001). To be personally liable under Bivens, a defendant cannot merely be liable under the theory of *respondeat superior*, but rather "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 675-76 (2009).

Thus, for plaintiff's amended complaint to be sufficient, plaintiff must assert facts plausibly demonstrating a violation of a federal right **and** that either: (1) Warden Bledsoe directly participated in violating plaintiff's federal rights; (2) Warden Bledsoe directed others to violate plaintiff's federal rights; or (3) Warden Bledsoe was the person in charge of plaintiff's incarceration and acquiesced as his subordinates violated plaintiff's federal rights. Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

In the instant matter, plaintiff has failed to establish that Bledsoe

participated in violating his constitutional rights regarding the claims asserted in the first seventeen paragraphs of his amended complaint. Further, plaintiff has failed to demonstrate that Bledsoe directed others to violate plaintiff's constitutional rights or had advance knowledge of that conduct and acquiesced in it. Rather, plaintiff argues Warden Bledsoe is legally responsible for the overall operation of the institution, and did not act to change prison conditions which the plaintiff found offensive, an allegation which sounds in *respondeat superior* liability. As such, the court will adopt the R&R and dismiss all supervisory liability claims against Warden Bledsoe.

## 4. <u>Bivens</u> Personal involvement claims

In addition to asserting <u>Bivens</u> claims under a theory of supervisory liability, plaintiff also states several personal involvement <u>Bivens</u> claims. The court will address these claims in turn.

### a. Kepner denying plaintiff recreation on April 14, 2011

Plaintiff asserts Kepner denied him recreation on April 14, 2011 in retaliation for filing administrative grievances against other USP-Lewisburg staff members. Kepner argues that plaintiff failed to exhaust his administrative remedies prior to filing this claim. Magistrate Judge

Schwab proposes dismissing this claim for non-exhaustion.  After careful review, we agree with Magistrate Judge Schwab.

Under the Prison Litigation Reform Act of 1996 (hereinafter the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002).  The exhaustion requirement is mandatory and applies on a claim-by-claim basis.  Jones v. Bock, 549 U.S. 199, 223 (2007);  Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

In the instant matter, plaintiff and the defendants engaged in discovery for over 1,000 days.  Plaintiff, however, has failed to present any credible evidence substantiating his assertion that he fully exhausted his claim that Kepner denied him recreation on April 14, 2011.  Rather, the undisputed evidence establishes plaintiff failed to fully exhaust this claim, directing its dismissal.  (SOF ¶¶ 180-92); Booth, 532 U.S. at 739.

### b.  The "planned attack" on May 13, 2011

Plaintiff next avers Defendant Kepner planned the May 13, 2011 altercation between plaintiff and another inmate.  (Doc. 38, Am. Compl. ¶ 7).  Plaintiff also claims Defendant Crawley failed to stop the altercation. (Id.)  Magistrate Judge Schwab recommends dismissing these retaliation claims against Defendants Crawley and Kepner.  After careful review, we agree with Magistrate Judge Schwab.

On May 13, 2011, plaintiff fought with another inmate in his recreation cage.  (SOF ¶¶ 52, 54-58).  According to plaintiff, Defendant Kepner changed the composition of inmates inside plaintiff's recreation cage.  (Doc. 102, Pl. Resp. to SOF ¶ 46).  Once plaintiff entered the recreation cage, the other inmate immediately charged at plaintiff and attempted to pin plaintiff up against the recreation cage.  (SOF ¶ 55). Plaintiff, however, overpowered the attacking inmate and placed him in a headlock.  (Id. ¶ 57).  Plaintiff then began beating the other inmate in his head numerous times with a closed fist.  (Id.)  Twenty seconds later, the inmates separated on their own and submitted to restraints.  (Id. ¶¶ 60-61).

The Eighth Amendment requires prison officials "to protect prisoners

from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994) (internal quotation omitted). Not every prisoner-inflicted injury, however, amounts to a constitutional violation. <u>Id.</u> at 834. To establish a failure-to-protect claim, a prisoner must show that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm" and (2) prison officials acted with "deliberate indifference"–that is, they knew of and disregarded an excessive risk to his safety. <u>See</u> <u>id.</u> at 834, 837; <u>see</u> <u>also</u> <u>Bistrian v. Levi</u>, 696 F.3d 352, 367 (3d Cir. 2012) (citations omitted) (noting failure-to-protect section 1983 claim also requires showing that the official's deliberate indifference caused the prisoner harm). Merely negligent conduct is insufficient. <u>Farmer</u>, 511 U.S. at 835. Prison officials should investigate each incident or threat of violence to determine if a request for protective custody is legitimate. <u>Young v. Quinlan</u>, 960 F.2d 351, 363 n.23 (3d Cir. 1992). An official who knows of a risk to a prisoner can avert liability if he shows that he acted reasonably, even if injury still occurred. <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 132 (3d Cir. 2001) (citation omitted).

Plaintiff has failed to establish a genuine issue of fact regarding whether Kepner and Crawley were deliberately indifferent to a substantial

safety risk.  FED. R. CIV. P. 56(a); Farmer, 511 U.S. at 834.  Plaintiff and

the other inmate were not on "single" recreation status, which would have

prohibited them from recreating together.  (SOF ¶ 66).  Moreover, plaintiff

immediately overpowered the other inmate, placed him in a headlock and

began beating the inmate's head with a closed fist.  (SOF ¶ 57).  In short,

no record evidence suggests that the other inmate, prior to the

recreational cage assault, posed a "pervasive risk of harm" to plaintiff.

Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  Ergo, the court will grant

summary judgment in favor of Defendants Kepner and Crawley regarding

plaintiff's planned attack claim.

### c. May 13, 2011 medical assessment

Plaintiff asserts a Bivens denial of medical care claim under the

Eighth Amendment against Defendant George arising from the May 11,

2013 "planned attack".  The Eighth Amendment protects prisoners from

cruel and unusual punishment, including "the unnecessary and wanton

infliction of pain."  Hudson v. McMillian, 503 U.S. 1, 5 (1992).  To prevail

on an Eighth Amendment denial of medical care claim, an inmate must

demonstrate: (1) a deprivation that is objectively sufficiently serious; and

(2) a sufficiently culpable state of mind of the defendant official.  Farmer,

511 U.S. at 825.

To establish the first element, the medical need and the alleged deprivation of care "must be objectively, sufficiently serious." Id. (quotation and citations omitted). The "concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." Colburn, 946 F.2d at 1023. A prisoner's medical condition must "be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death" and one that either "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id.

To establish the second element, the plaintiff must demonstrate that the defendant acted with deliberate indifference. A prison official acts with deliberate indifference where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The Supreme Court has explained that "deliberate

22

indifference describes a state of mind more blameworthy than negligence," but that the deliberate indifference standard is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835.

Plaintiff argues the undisputed record establishes he suffered serious injuries resulting from a fight with another inmate on May 13, 2011. Specifically, plaintiff sustained bruises on his face and torso and a bite mark on his chest. (Doc. 102, Pl. Resp. to SOF ¶ 63). These minor injuries, however, fail to support the conclusion that plaintiff's medical needs were indeed serious and defendants were aware of the needs. Iqbal, 556 U.S. at 678. Furthermore, plaintiff has failed to establish that Defendant George acted with deliberate indifference to plaintiff's medical needs. Id. Because the undisputed evidence establishes that plaintiff did not suffer serious injuries and Defendant George did not act with deliberate indifference, the court will grant judgment as a matter of law in favor of Defendant George on plaintiff's Eighth Amendment denial of medical care claim.

### d. Denial of due process

Plaintiff next seeks money damages from Defendants Crawley,

Jordan and Cotterall, arguing these defendants denied him due process during the disciplinary hearing stemming from the "planned attack" on May 13, 2011.[6] Plaintiff asserts Defendant Crawley lied in the incident report, Defendant Jordan colluded with staff to find him guilty of fighting and Defendant Cotterall, plaintiff's appointed staff representative, failed to present a self-defense theory justifying his need to fight. Magistrate Judge Schwab proposes dismissing this claim because the United States Supreme Court precludes any section 1983 claim that calls into question a disciplinary finding.

The United States Supreme Court has held that a person convicted of a criminal offense may not bring a civil rights action challenging any aspect of the criminal conviction without first using appropriate procedural mechanisms to overturn the criminal proceeding. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Three years later, the Court extended Heck's rationale to disciplinary proceedings in the prison context, holding an inmate may not bring a civil rights action for damages related to an inmate disciplinary proceeding without first challenging and overturning, via the

_____

[6] The disciplinary hearing officer sanctioned plaintiff with thirty (30) days disciplinary segregation and a four (4) month loss of commissary, telephone and visiting privileges. (SOF ¶ 95).

appropriate proceedings, the disciplinary hearing in question. Edwards v. Balisok, 520 U.S. 641, 646-47 (1997).

In the instant matter, despite over 1,000 days of discovery, plaintiff has failed to present evidence demonstrating that his disciplinary sanctions have ever been called into question, or overturned through a collateral action, such as a 28 U.S.C. § 2241 petition for a writ of habeas corpus. In fact, the record establishes that these sanctions still remain on plaintiff's disciplinary record. (Doc. 86, SOF ¶ 99). Consequently, Heck and Edwards clearly preclude plaintiff's civil rights claim stemming from his disciplinary hearing, and the defendants are entitled to summary judgment on this issue.

**e. Ban on UCC related material**

Plaintiff also objects to USP-Lewisburg's prohibition against inmates possessing Uniform Commercial Code (hereinafter "UCC") materials. The Third Circuit Court of Appeals, however, has held that the policy permitting confiscation of these types of materials is not constitutionally unreasonable because it advances an interest in preventing prisoners from filing fraudulent liens. Monroe v. Beard, 536 F.3d 198, 207-10 (3d Cir. 2008) (finding the BOP's decision to confiscate UCC materials in

response to numerous inmates filing UCC liens against judges, United States attorneys and district attorneys advances an interest in preventing prisoners from filing fraudulent UCC liens).  Accordingly, the court will overrule plaintiff's objection regarding defendants prohibiting inmates from possessing UCC materials.

**f.  Ban on plain nudity**

The BOP bans sexually explicit materials.  Plaintiff argues that this ban violates his First Amendment rights.  Magistrate Judge Schwab proposes two recommendations.  First, Magistrate Judge Schwab recommends that we find the ban constitutional pertaining to pictorial depictions of sexually explicit materials.  Second, Magistrate Judge Schwab recommends allowing plaintiff's claim pertaining to written materials of a sexual nature to proceed.  We will address these recommendations separately.

**1.  Pictorial depictions of sexually explicit materials**

Magistrate Judge Schwab recommends the we find the BOP's ban of pictorial depictions of sexually explicit materials constitutional because

it is rationally related to a valid penological interest.[7]  Plaintiff objects to

this recommendation.  After a careful review, we will overrule plaintiff's

objection.

Inmates do not completely forego their constitutional rights because

of their incarcerated status, but those rights are necessarily limited.

Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir.1999) (citing Jones v.

N.C. Prisoners' Labor Union, 433 U.S. 119, 125 (1977)).  An inmate

retains his First Amendment rights that are "not inconsistent with his

status as a prisoner or with the legitimate penological objectives of the

corrections system."  Pell v. Procunier, 417 U.S. 817, 822, (1974); see

---

[7]  The BOP bans pictorial depictions of sexually explicit materials
under the Ensign Amendment, 28 U.S.C. § 530C(b)(6).  The Ensign
Amendment prohibits the utilization of funds appropriated for the BOP to
"distribute or make available to a prisoner any commercially published
information or material that is sexually explicit or features nudity."  28
U.S.C. § 530C(b)(6).

A BOP regulation defines the key terms of the amendment as
follows: "sexually explicit" means "a pictorial depiction of actual or
simulated sexual acts including sexual intercourse, oral sex, or
masturbation"; "features" means that the publication in question "contains
depictions of nudity or sexually explicit conduct on a routine or regular
basis or promotes itself based upon such depictions in the case of
individual one-time issues"; and "nudity" means "a pictorial depiction
where genitalia or female breasts are exposed."  28 C.F.R. § 540.72(b).
The definition of "features" includes an exception for material that contains
nudity "illustrative of medical, educational, or anthropological content."  Id.

27

also Turner v. Safley, 482 U.S. 78, 89, (1987) (noting that First Amendment protections are lessened in the prison context where legitimate penological interests must be considered in assessing the constitutionality of official conduct).  To evaluate whether prison regulations violate an inmate's First Amendment right to possess publications or legal materials, we employ the "reasonableness test" established in Turner.

In Turner, the Supreme Court recognized that subjecting the day-to-day judgments of prison officials to a strict scrutiny analysis would impede the officials' ability to anticipate and solve security and administrative problems.  482 U.S. at 89.  Instead, the Court found that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is **reasonably related to legitimate penological interests**."  Id. (emphasis added).

The Court listed four factors that are relevant in determining the reasonableness of a particular prison regulation: (1) there must be a "valid, rational connection" between the prison regulation and the legitimate, neutral governmental interest put forward to justify it (hereinafter the "First Turner Factor"); (2) whether the inmate has

alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at *de minimis* cost to valid penological objectives (Turner factors 2-4 are collectively the "Other Turner Factors").  Id. at 89-91 (quoting Block v. Rutherford, 468 U.S. 576, 586 (1984)).

The Third Circuit Court of Appeals has developed a two-step analysis regarding the Turner Factors.  Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012).  "First, the prison has the burden of demonstrating the First Turner Factor.  This burden is slight, and in certain instances, the connection may be a matter of common sense."  Id. (citing Wolf v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002)).  "Second, if the prison meets its burden under the First Turner Factor, then we consider the Other Turner Factors."  Id.  The inmate has the burden of production regarding the Other Turner Factors, and the inmate retains the overall burden of persuasion pertaining to whether the BOP's policy is unconstitutional. Id. at 156-58.

Defendant asserts that the Ensign Amendment and BOP policies prohibiting pictorial depictions of nude and sexually explicit materials is

necessary to maintain prison security and to further rehabilitative goals. (SOF ¶ 137-38). We find that this explanation satisfies the First Turner Factor's slight burden. <u>See</u> <u>Ramirez v. Pugh</u>, 486 F. Supp. 2d 421, 428-34 (M.D. Pa. 2007) (finding that the Ensign Amendment and BOP regulations prohibiting inmates from possessing <u>Playboy</u> and <u>Penthouse</u> reasonably serve legitimate penological interests concerning rehabilitation and institutional security). Therefore, the burden of production shifts to plaintiff to establish the Other Turner Factors.

Plaintiff has failed to satisfy the Other Turner Factors. Specifically, plaintiff has failed to refute that he has alternative means of exercising his First Amendment rights to receive a broad range of publications that do not depict nudity. Additionally, plaintiff has pointed to no alternative to the regulation, which would fully accommodate his rights at *de minimis* cost to valid penological objectives.

Moreover, the parties engaged in discovery from May 18, 2012 through March 18, 2015–a period of 1,034 days. Yet, plaintiff offers no argument in his objections to the R&R, brief in opposition to defendants' objections to the R&R, or brief in opposition to defendants' motion to dismiss/motion for summary judgment pertaining to the Other Turner

Factors.  (See generally Docs. 101, 123 and 132).  Rather, plaintiff appears to rest on his pleadings.

Plaintiff's failure to go beyond his pleadings, however, is insufficient to manufacture an issue of material fact because the non-moving party must go beyond its pleadings and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  In short, plaintiff has failed to carry his burdens of production and persuasion under Turner.  Thus, the court will overrule plaintiff's objection and find constitutional the ban pertaining to pictorial depictions of sexually explicit materials.

Having determined the BOP's ban of pictorial depictions of sexually explicit materials is constitutional, the court next addresses whether the BOP properly rejected plaintiff's publications.  Plaintiff arranged to have seven (7) publications mailed to him.  The publications include: Pornoland, Heidi's Bedtime Stories, Velvet Nightmares, Succulent, Smut, Sex, the Ultimate Lover's Guide and forty-two (42) sexually explicit personal photos.  (Doc. 131, rejected publications at 1, 11, 27, 16-17).  A review of these publications, establishes that five (5) contain sexually explicit

images or feature nudity.  The five publications are: <u>Pornoland</u>, <u>Velvet Nightmares</u>, <u>Smut</u>, and <u>Sex, the Ultimate Lover's Guide</u> and forty-two (42) sexually explicit personal photos.  (Doc. 131, rejected publications at 1, 11, 27, 16-17).  As such, the BOP properly rejected these publications and the court will grant summary judgment in defendants' favor on this issue.

The remaining two publications, <u>Heidi's Bedtime Stories</u> and <u>Succulent</u>, appear to contain only sexually explicit prose and fail to contain any sexually explicit images.  Accordingly, the court will need to determine whether the BOP's ban pertaining to written materials of a sexually explicit nature is constitutional.

### 2.  Written materials of a sexual nature

Magistrate Judge Schwab recommends allowing plaintiff's claim regarding BOP's prohibition against written materials of a sexually explicit nature to proceed.  Magistrate Judge Schwab observes that the Ensign Amendment and corresponding BOP procedures only ban pictorial depictions of sexually explicit images.  Therefore, the BOP's decision to ban written materials of a sexually explicit nature is not rationally related to a valid penological interest.

Warden Bledsoe objects arguing the Ensign Amendment is not the

sole tool a warden may use to deny an inmate from receiving a publication. Rather, a different regulation, one not raised before Magistrate Judge Schwab, grants wardens the discretion to reject "sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity." 28 C.F.R. § 540.71(b)(7).

As previously stated, the court evaluates whether prison regulations violate an inmate's First Amendment right to possess publications under Turner's "reasonableness test." The First Turner Factor states that there must be a "valid, rational connection" between the prison regulation and the legitimate, neutral governmental interest put forward to justify it. Turner, 482 U.S. at 89-91. The prison bears the burden of production regarding the First Turner Factor. Johnson, 669 F.3d at 156.

In the instant matter, Warden Bledsoe asserts his decision to deny written materials of a sexual nature is rationally related to a valid penological interest for two reasons. First, the United States Supreme Court has determined that this regulation is facially valid. Thornburgh v. Abbott, 490 U.S. 401, 419 (1989); see also Ramirez v. Pugh, 379 F.3d 122, 125 n.1 (3d Cir. 2004) (noting that this regulation is is still in place to

the extent that it involves material falling outside the scope of the Ensign Amendment's prohibitions of pictorial depictions of sexually explicit materials).  Thus, plaintiff's claim that no application of this regulation is constitutional fails as a matter of law.  Thornburgh, 490 U.S. at 419.

Second, Warden Bledsoe asserts 28 C.F.R. § 540.71(b)(7) and BOP policies prohibiting written materials of a sexual nature are necessary to maintain prison security and to further rehabilitative goals.  (SOF ¶ 137-38).  We find that these two explanations satisfy the First Turner Factor's slight burden.  Ramirez, 486 F. Supp. 2d at 428-34.  As such, the burden of production shifts to plaintiff to establish the Other Turner Factors.

Plaintiff, however, cannot establish the Other Turner Factors. Specifically, plaintiff has failed to refute that he has alternative means of exercising his First Amendment rights to receive a broad range of publications that are not written materials of a sexual nature.  Additionally, plaintiff has pointed to no alternative to the regulation, which would fully accommodate his rights at *de minimis* cost to valid penological objectives. In short, plaintiff has failed to carry his burdens of production and persuasion under Turner.  Accordingly, the court will sustain Warden Bledsoe's objection and find the ban constitutional pertaining to written

materials of a sexual nature because it is rationally related to a valid penological interest.  Ergo, the court will grant summary judgment in favor of Warden Bledsoe regarding Bledsoe's decision to prohibit plaintiff from receiving Heidi's Bedtime Stories and Succulent.

## 5.  Additional FTCA claims

Plaintiff next objects to Magistrate Judge Schwab's recommendation proposing the court deny plaintiff's motion for summary judgment regarding several additional FTCA claims arising from the May 13, 2011 "planned attack".[8]  Defendants assert plaintiff has failed to administratively exhaust these claims.  After careful review, the court agrees with the defendants.

The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated.  28 U.S.C. § 2674.  In this regard,

---

[8]  Plaintiff's additional FTCA claims include: (1) whether USP-Lewisburg staff negligently included an "unstable" inmate in his recreation group; (2) whether USP-Lewisburg staff had a duty to protect inmates who are not allowed to defend themselves; (3) whether staff's "refusal to offer [him] a means of retreat [during the altercation] show[ed] negligence"; (4) whether staff's "refusal to interfere [during the altercation] show[ed] negligence"; (5) whether the "denial of access to medical treatment constitute[d] an act of ordinary negligence"; and (6) whether the denial of the "right to a witness involving good time loss violate[d] due process, and denial of self defense."  (Doc. 38, Am. Compl. ¶¶ 7, 18).

"[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Defendants liable in tort as a private individual would be under like circumstances.'" Soda v. Alvarez-Machain, 542 U.S. 692, 700 (2004) (citing Richards v. United States, 369 U.S. 1, 6 (1962)); see also CNA, 535 F.3d at 138 (reasoning that 28 U.S.C. § 1346(b)(1), the FTCA provision conferring jurisdiction on district courts, treats actions against government employees like the "analogous behavior" of "private persons" under state law).

To file an FTCA action, a plaintiff must complete a two-step process. First, the plaintiff must "present . . . the claim to the appropriate federal agency" in writing within two years after the claim accrues.[9]  28 U.S.C. § 2675(a); 28 U.S.C. § 2401(b).  This exhaustion requirement applies on a claim-by-claim basis.  Jones v. Brock, 549 U.S. 199, 223 (2007).  Second, plaintiff must file a complaint in federal court "within six months after the

---

[9] A demand is considered "presented" when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain.  28 C.F.R. § 14.2(a).

date of mailing of final denial" of the administrative claim.[10] 28 U.S.C. § 2401(b).

The Third Circuit Court of Appeals directs that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, . . . the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citing Livera v. First Nat'l Bank of N.J., 879 F.2d 1186, 1194 (3d Cir. 1989)).

In the instant matter, the undisputed evidence establishes that on May 19, 2011, plaintiff filed **one** administrative tort claim resulting from his May 13, 2011 altercation.  (SOF ¶ 166; Doc. 86-4, Pl. Admin. Claim dated 5/19/11).  On his grievance form, plaintiff complained of Officer Kepner shuffling "around my recreation group" and adding a prisoner who "immediately attacked" plaintiff when plaintiff entered his recreation cage. (Doc. 86-4, Aff. to Pl. Admin. Claim dated 5/19/11 ¶ 1).  Plaintiff further complained that USP-Lewisburg issued him an incident report resulting

---

[10]  A federal agency's failure "to make [a] final disposition of a claim within six months after it is filed shall . . . be deemed a final denial."  28 U.S.C. § 2675(a).

from this altercation "which may thwart my advancement in the SMU Program and set me back to the beginning" and that plaintiff may lose his "incentive program slot" and telephone and commissary privileges. (Id.)

Plaintiff, however, made no allegations concerning any improper response or delay in coming to his rescue. Plaintiff made no assertions regarding denial of medical treatment. In short, plaintiff failed to exhaust his administrative remedies for these claims, directing their dismissal.[11] Booth, 532 U.S. at 739. Thus, the court will adopt the R&R and deny plaintiff's motion for summary judgment regarding these unexhausted FTCA claims.

## 6. Inadequate ventilation claim

Finally, plaintiff claims Magistrate Judge Schwab failed to address his lack of ventilation claim against the correctional officer defendants, which requires this claim to proceed to trial. The court, however, will address the merits of this claim because we review Magistrate Judge

---

[11] Moreover, the Federal Bureau of Prison's response to plaintiff's May 19, 2011 administrative claim only addressed plaintiff's personal injury claim resulting from the May 11, 2011 altercation. (SOF ¶ 168; Doc. 86-4, NERO denial letter dated 7/29/11).

Schwab's R&R de novo.[12]

Plaintiff raises an Eighth Amendment conditions-of-confinement claim regarding inadequate ventilation, which resulted in a heat rash. As previously stated, conditions of confinement are unconstitutional where a prisoner is denied the "minimal civilized measure of life's necessities" through prison officials' deliberate indifference to a condition posing a substantial risk of serious harm. Farmer, 511 U.S. at 834 (quoting Rhodes, 452 U.S. at 347 (1981)). Only "extreme deprivations" meet this standard. Hudson, 503 U.S. at 9. In particular, while a prisoner is entitled to adequate medical care, Farmer, 511 U.S. at 832, if a prisoner is receiving physician attention, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Defendants' evidence established that inmates in housing units without air conditioning have access to windows that can open for

_____

[12] Moreover, both parties' briefs and statements of facts addressed plaintiff's lack of ventilation claim demonstrating that both parties had notice and an opportunity to support and oppose this claim. (See Doc. 87, Defs.' Br. in Supp. Mot. for Summ. J. at 20-21; Doc. 101, Pl. Br. in Opp'n at 3, 6; SOF ¶¶ 117-123; Doc. 102, Pl. Resp. to SOF ¶¶ 118-19, 123). As such, the court will address the substantive merits of plaintiff's lack of ventilation claim.

ventilation. (SOF ¶ 117). In addition to operable windows, large fans are secured to the ceilings of those housing units without air conditioning in order to assist with air flow. (SOF ¶ 118). Plaintiff counters that the fans are "in the hallways behind full length doors providing no air flow to the cells." (Doc. 102, Pl. Resp. to SOF ¶ 118). Plaintiff further states that he "passed out from heat exhaustion" and medical, an hour later, diagnosed him with heat rash. (Id. ¶¶ 119, 123).

Even viewing plaintiff's evidence in the light most favorable to him, a reasonable fact finder could not conclude that plaintiff suffered an Eighth Amendment deprivation. Plaintiff's heat rash and alleged delay in medical care do not amount to an Eighth Amendment deprivation because USP-Lewisburg medical staff treated plaintiff on July 21, 2011 and again on July 25, 2011. (SOF ¶¶ 121-23). Specifically, on July 21, 2011, medical staff evaluated plaintiff and determined plaintiff had no significant medical condition. (SOF ¶ 121). Four days later, on July 25, 2011, medical staff evaluated plaintiff for heat rash and determined plaintiff suffered from fungus in his toe nails, reflux and hypertension. (SOF ¶¶ 122-23). Because plaintiff received medical attention, the defendant correctional officers cannot have been deliberately indifferent to a serious risk related

to a lack of proper medical care stemming from improper ventilation. Spruill, 372 F. 3d at 236. Ergo, the court will grant summary judgment on plaintiff's Eighth Amendment inadequate ventilation claim in favor of defendants.

## B. Report and Recommendation - Government's Objections

The government objects to Magistrate Judge Schwab's recommendation that plaintiff's FTCA claim against Defendant Kepner regarding the assault on May 13, 2011 be allowed to proceed. The government asserts the FTCA's discretionary function exception precludes this claim. We agree with the government.

As a sovereign, the United States is generally immune from suit. S.R.P., 676 F.3d at 332. The FTCA, however, waives the government's immunity "for torts committed by 'any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Id. (quoting 28 U.S.C. § 1346(b)(1)).

In relevant part, the FTCA sets forth a discretionary function exception to the waiver of sovereign immunity. Under that exception, the

government remains immune from suit for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

To ascertain the applicability of the discretionary function exception, we first determine whether the challenged conduct involves an "element of judgment or choice." Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000). If it does, we then consider "whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. (citations omitted).

"Before we can make the two-part . . . inquiry to determine whether the discretionary function exception immunizes the Government from a suit based on its conduct, we must identify the conduct at issue." Maranta v. United States, 517 F.3d 160, 165 (3d Cir. 2008). Here, plaintiff alleges that the BOP "changed my rec-group and added a prisoner who'd had multiple altercations while in [the special management unit] and was placed on single rec status" and failed to protect plaintiff from this inmate. (Doc. 38, Am. Compl. ¶ 7).

42

"Now that we have identified the Government's conduct at issue in this case, we determine whether the discretionary function exception immunizes it from a lawsuit based on that conduct." <u>Maranta</u>, 517 F.3d at 168. This inquiry requires us to "decide whether a statute, regulation, or policy required" the BOP to protect plaintiff "in any specific manner, or whether the Government's actions were discretionary because they involved an element of judgment or choice." <u>Id.</u> (citation and internal quotation marks omitted).

The United States owes a duty of care to federal prisoners under 18 U.S.C. § 4042, which states, in relevant part, that the BOP shall "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." No federal statute, regulation, or policy required the BOP to take a particular course of action to ensure plaintiff's safety from inmate attacks. Therefore, the first step of the discretionary function analysis is satisfied. <u>Ranald</u>, 460 F. App'x at 81-82; <u>see</u> <u>also</u> <u>Donaldson v. United States</u>, 281 F. App'x 75, 77 (3d Cir. 2008) (citing <u>Cohen v. United States</u>, 151 F. 3d 1338, 1342 (11th Cir. 1998) (explaining that even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the

means it may use to fulfill that duty to trigger the discretionary function exception)).

Turning to the second prong of the discretionary function exception, we conclude that the judgment involved in this case–i.e., how best to protect one inmate from the threat of attack by another–"is of the kind that the discretionary function exception was designed to shield."  Mitchell, 225 F.3d at 363.  Prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); see also Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981) (noting that prison officials have discretionary power over the safety of the institutions they operate).

Plaintiff contends BOP Program Statement 5217.01 provides that only the "Associate Warden" can determine "which inmates may be housed or participate in activities together, as necessary to protect the safety, security, and good order of the institution."  (Doc. 133-1, BOP Program Statement No. 5217.01 at 7).  As such, Defendant Kepner had no discretion to place the attacking inmate in plaintiff's recreation group.

Plaintiff cites no authority for this proposition and our research has uncovered none.  Indeed, the Third Circuit Court of Appeals has indicated that the BOP retains discretion regarding the "protection" and "safekeeping" of inmates.  Thrower v. United States, 528 F. App'x 108, 111 (3d Cir. 2013) (citing Mitchell, 225 F.3d at 363).  Furthermore, plaintiff and the other inmate were not on "single" recreation status, which would have prohibited them from recreating together.  (SOF ¶ 66).  Accordingly, the court will find that the FTCA's discretionary function exception precludes plaintiff's negligence claims arising from the May 13, 2011 planned attack.

**Conclusion**

For the foregoing reasons, the court will adopt those portions of the R&R to which no objections were filed.  Additionally, the court will sustain defendants' objection pertaining to the discretionary function exception precluding plaintiff's FTCA claim arising from the May 13, 2011 "planned attack".  The court will also sustain defendant's objection regarding their decision to prohibit plaintiff from possessing Pornoland, Heidi's Bedtime Stories, Velvet Nightmares, Succulent, Smut, Sex, the Ultimate Lover's Guide and forty-two (42) sexually explicit personal photos.  All other

objections will be overruled.

Thus, the only claim remaining in this case is plaintiff's <u>Bivens</u> claim against Defendant Prutzman averring Prutzman stole and damaged plaintiff's personal property in violation of the Due Process Clause of the Fifth Amendment. An appropriate order follows.

**Date: \_\_08/24/2015\_\_**  **s/ James M. Munley_____**
                     **JUDGE JAMES M. MUNLEY**
                     **United States District Court**

46